IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA          :
                                  :
          v.                      :
                                  :
JOFFRE JAMES CROSS, III           :   1:07CR218-1, 1:07CR337-2
JASON SCOTT NIEWOIT               :   1:07CR218-2, 1:07CR337-1


<u>FACTUAL BASIS FOR GUILTY PLEA</u>

NOW COMES the United States of America, by and through Anna Mills Wagoner, United States Attorney for the Middle District of North Carolina, and as a factual basis under Rule 11, Fed. R. Crim. P., states the following:

On March 30, 2007, the FBI Charlotte Field Office received information concerning recent Internet communication involving an individual using the screen name "jagervonjuden" (translation - "hunter of jews"). "Jagervonjuden" was ultimately identified as a screen name utilized by Defendant Cross. During a series of Internet postings during March 2007, Defendant Cross outlined his knowledge of firearms and explosives, making recommendations as to the most effective munitions available for use. These Internet postings were made to webpages such as "Stormfront White Nationalist Community" and "Smoky Mountain Resistance Forum."

On March 31, 2007, Defendant Cross attended a cookout in western North Carolina. During the cookout, an FBI Cooperating Source (hereinafter CS) met with Defendant Cross, at which time the two men had preliminary discussions concerning Defendant

Cross supplying the CS with equipment for "the movement." During April, 2007, the CS spoke with Defendant Cross on multiple occasions, setting up a sale of equipment to the CS.

On May 4, 2007, the CS met with Defendant Cross, accompanied at that time by Defendant Niewoit, in the parking lot of BJ's Wholesale Club, located at 7905 Lyles Lane in Concord, North Carolina. The CS had been fitted with a recording device prior to the meeting and the meeting was photographed using a telephoto lens. During the meeting with the Defendants, the CS purchased from them five auto-injectable vials of Morphine Sulphate, one Point Blank ballistic vest, one camouflage helmet and one compression bandage. The CS paid the Defendants $1,100.00 for the property.

On May 24, 2007, a second meeting was arranged, this time with the CS, Defendants Cross and Niewoit, and an individual identified as a white supremacist from California interested in purchasing military equipment from the Defendants. This individual was in truth an undercover FBI Agent (hereinafter UCE). After attending a race at Lowe's Motor Speedway and having dinner, the UCE and the Defendants met in the parking lot of the Hampton Inn, 9850 Weddington Road Extension, Concord, North Carolina. Once at that location, Defendant Cross opened the rear hatch of his Jeep Grand Cherokee and displayed to the UCE a Pelican case filled with medical supplies (to include bandages,

2

tubes, gloves and glasses).  Defendant Cross explained that the
medical supplies had been stolen from the Army and were the
latest medical supplies available.  The UCE declined to purchase
the medical supplies.  At that point, Defendant Cross removed a
desert camouflaged ballistic vest containing plates in both the
front and back.  Defendant Cross explained that this was a Level
IV vest and was capable of stopping all handgun and rifle rounds.
Defendant Cross added that this vest was currently being utilized
by soldiers in Iraq.  Defendant Cross stated that the UCE could
buy the latest Army combat helmet and the Level IV ballistic vest
for $1,000.00.  The UCE negotiated to purchase the vest and the
helmet for $900.00.

        After agreeing on the price of the Level IV vest and helmet,
Defendant Cross removed and unlocked a separate Pelican case,
which contained syringes of Morphine Sulfate and Diazepam.
Defendant Cross explained that he kept the case locked, in the
event he was stopped by the police, as police would need a
separate warrant to open a locked container.  After negotiating
with Defendant Cross, the UCE agreed to a price of $15 per
syringe for the Morphine Sulfate and $10 per syringe for the
Diazepam.  Thereafter, the UCE purchased thirty auto-injectable
syringes of Morphine Sulfate and twelve auto-injectable syringes
of Diazepam.

3

While standing at the back of the Jeep Grand Cherokee, Defendant Niewoit offered to sell the UCE a second ballistic vest, a Level III vest with one plate, for $500.00. The UCE asked if this vest was a surplus item. The Defendants stated that both vests were not surplus items, but currently issued Army vests. The UCE negotiated a price of $400.00 for the second vest and purchased same. During the course of the purchase of these items, the UCE observed a Bushmaster rifle in the rear of the Jeep Grand Cherokee. Defendant Cross stated that the weapon, which was semiautomatic, could be purchased for $1,000.00. At one point while standing at the back of the Jeep Grand Cherokee, Defendant Niewoit removed the rifle from the rear of the vehicle and handed it to the CS for inspection. The UCE had no additional funds with which to purchase the rifle and therefore did not do so.

The UCE had been fitted with a recording device prior to the meeting and the meeting was again photographed using a telephoto lens. In addition, all of the above described items were identified as property of the United States having a total value of over $1,000.00.

Between May 25, 2007, and June 4, 2007, the UCE was in telephonic communication with Defendant Cross setting up a third purchase of stolen government property. Included in the property to be sold on this occasion was a U.S. Army High Mobility

4

Multipurpose Wheeled Vehicle (hereinafter Humvee).  Defendant
Cross told the UCE that the Humvee was going to be stolen from a
U.S. Army motor pool and then placed in a desolate area of Ft.
Bragg so that it could be retrieved by the UCE at a later time.

On June 4, 2007, the UCE met with Defendants Cross and
Niewoit in the parking lot of the Mash House Restaurant and
Brewery located at 4150 Sycamore Dairy Road in Fayetteville,
North Carolina.  Once at that location, Defendant Cross opened
the rear hatch of the Jeep Grand Cherokee and opened a Pelican
case filled with medical supplies.  Thereafter, the UCE purchased
fifteen auto-injectable syringes of Morphine Sulfate for $15.00
per syringe and five auto-injectable syringes of Diazepam for
$10.00 per syringe.  The parties arranged to meet later in the
day to finalize plans for the sale of the Humvee, which had
already been removed from a motor pool on Ft. Bragg and stored in
an isolated area within the confines of the base.  As the
Defendants left the meeting with the UCE they were arrested.

Seized from the console area of the Jeep Grand Cherokee next
to the driver's seat was a Glock GMBH .40 caliber semiautomatic
handgun, model 23C.  The firearm, which had been converted to
fire 9mm rounds, had a fully loaded magazine and contained a
round in the chamber.  Also recovered from the Jeep were five
alcohol pads, three Betadine swab sticks, one ace bandage, one
first aid camouflage dressing, one black Pelican case with

miscellaneous medical supplies and two military style gas masks with carrying cases.

With the exception of the Glock pistol, all of the above described items were identified as property of the United States having a total value of over $1,000.00. The Humvee was later recovered on an isolated area of Ft. Bragg. The vehicle, identified by serial number 023597, had a value of approximately $34,735.00. The total value of all the property determined to have been taken by the Defendants has been estimated to be between $42,000.00 and $47,000.00.

The total amount of Morphine Sulfate distributed was 50 milligrams and the total amount of Diazepam distributed was 34 milligrams.

This the 2nd day of October 2007.

<div style="margin-left:40%">

Respectfully submitted,

ANNA MILLS WAGONER
United States Attorney




/S/CLIFTON T. BARRETT
NCSB No. 12858
Assistant United States Attorney
Chief, Criminal Division
   P.O. Box 1858
   Greensboro, NC  27402
   336/333-5351
E-mail:  cliff.barrett@usdoj.gov

</div>

Case 1:07-cr-00337-WO   Document 3   Filed 10/02/07   Page 6 of 7

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Curtis Scott Holmes and Jeffrey B. Welty; and that a copy of same was served, by hand-delivery, on the United States Probation Office, 101 S. Edgeworth Street, Greensboro, NC.

```
                                    /s/ CLIFTON T. BARRETT
                                    Assistant United States Attorney
                                    Chief, Criminal Division
                                    NCSB No.: 12858
                                    United States Attorney's Office
                                         P.O. Box 1858
                                         Greensboro, NC  27402
                                         336/333-5351
                                    E-mail: cliff.barrett@usdoj.gov
```

Case 1:07-cr-00337-WO   Document 3   Filed 10/02/07   Page 7 of 7